George Andrews, J.,
delivered the opinion of the Court.
The bill in this cause, was filed in the year 1848, for a- construction of the will and settlement of the estate of Joshua Pearre, who died in 1847.
By his will, the testator specifically disposes of all his real and personal estate for the benefit of his widow and of his children and grand-children, but does not expressly designate any fund for the payment of debts and expenses.
By the 2nd, ,3rd, 4th and 5th items of his will, he gives pecuniary legacies to certain children and grandchildren. The 7th item is as follows:
“ My further will and desire is, that all my personal property of every description, be sold to the highest bidder, on a credit of twelve months, , to enable my executors, hereinafter named, to pay the above-mentioned *173 legacies; all my slaves, over twenty-five years of age, to be included in the said sale; but none of my slaves under twenty-five years of age to be included in this sale; and after paying the above-mentioned legacies, the balance, if any, to be equally divided between my wife, Milly A. Pearre, and the children of my son, Joshua A. Pearre, deceased, that is to say,” &a.
In the 8th item of his will, the testator, gives to Matthew Johnson and James McCutchen, the executors named in the will, all his negroes under the age of twenty-five years, upon the special trust that they should, after his decease, proceed to hire out the said negroes, from year to year, till the year 1853; that on the first day of January, 1854, application should be made to these negroes to know whether they were willing, to go Liberia; and all that should report themselves willing to go, should be free on that day; and those who should refuse to go, should be sold. Certain of the negroes named, were to have the proceeds of their hire for a certain length of time previous to their emancipation; twenty dollars for each negro going to Africa were to be paid to the American Colonization Society, provided that society would undertake to transport the negroes to Africa; and the remainder of the fund arising from the sale or hire of the negroes, to be divided between his widow and his children, and grand-children.
The persons named as executors and trustees, refusfed to serve in either capacity; and the complainant was ap* pointed administrator,. with the will annexed.
The widow, Milly A. Pearre, dissented from the will. The present bill alleges the following facts; That dowoi' *174 has been assigned to the widow, (out of what lands it does not appear;) and that she claims her share of the [personal estate; that the administrator has sold all the personal property, except the slaves, for the sum of $76.80; and that the debts of the estate amount to $1,158, besides interest. It is further alleged, that three of the testator’s negroes were, at his death, above the age of twenty-five years, and that they were old and of little value; that the negroes are still unsold; and that no fund is provided by the will for the payment of debts, and no power given to sell any property, except the perishable property and the negroes over twenty-five years of age; the proceeds of which sales are appropriated to purposes other than the payment of debts, and are insufficient to satisfy the pecuniary legacies given.
The bill makes the widow and the several legatees, but not the negroes, parties defendant; and prays for a construction of the will; the appointment of trustees in place of Johnson and McCutchen; that a fund be created for the payment of debts, legacies, and expenses ; that the interests of the widow, legatees and slaves, be protected, and for general relief.
The bill was taken for confessed against the defendants. No trustees were ever appointed in place of those named in the will.
The three negroes over the age of twenty-five years, were sold by the Clerk and Master, by the order of the Chancery Court; and the proceeds of this sale, with the hire of the same negroes previous to their sale, and the proceeds of other personal property sold by the administrator, amounted to the sum of $898.65.
*175 The proceeds of the sale of these negroes and of this personal property, were, by the 7th item of the will, directed to be distributed among certain legatees; but this whole fund was used in the payment of debts and expenses of the estate, there being no other property, so far as appears in this record, except the emancipated negroes and real estate.
At the December Term, 1852, the Clerk and Master made a report, in pursuance of a previous order, showing that the administrator was chargeable with the above sum of $898.65, and with the further sum of $536.12, the proceeds of the hire of the negroes who were directed to be emancipated — making a total coming to his hands of $1,434.77; and that he had expended on behalf of the estate in payment of debts, amount allowed to the widow, and expenses, the sum of $1,715.58, showing that the estate was indebted to the administrator the sum of $280.81.
Upon this report, the Court decreed, that, it appear-* ing that the entire real estate of the testator was devised by his will, that the slaves directed to be emancipated being the previous fund for the payment of debts, are to be exhausted before the real estate can be reached for that purpose; that the said slaves should be hired out by the administrator, until the proceeds of their hire should be sufficient to pay all the liabilities of the estate, and the distributive share of the widow; and that the widow' was entitled to succeed to the personal estate of her deceased husband in the same manner as if he had died intestate.
*176 The negroes being interrogated by order of tbe Court, expressed their desire to go to Liberia.
The total hire of the emancipated negroes up to the hist day of January, 1854, was $1,024.83, of which a portion was bequeathed to certain of the slaves who earned it, and the rest was bequeathed to other legatees.
After this, the slaves were hired out for successive years by the administrator, under the orders of the Court, till the October Term, 1860, when the Clerk and Master reported that all the debts and liabilities of the estate, except the costs of the cause, had been paid, and showing A large balance in the hands of the administrator. The report was confirmed, and a decree made, reciting that it appeared that the balance in the hands of the administrator was not sufficient to send the negroes to Liberia; and directing the administrator to hire them out for tiie year 1861. The negroes were accordingly hired out for the year 1861, but do not appear to have been so hired after that time.
The total amount of the hire of the emancipated ne-groes received by, and charged to, the administrator, was $4,211.61. He expended in the payment of debts, the distributive share of the widow, and expenses of admin-i istration, the fund of $898.65, first realized as above stated; $1,024.83, earned by the emancipated negroes previous to January 1st, 1854; and the further sum of $1,021.66,. out of the hire of the emancipated negrpes accruing after that date — making the entire amount of debts and expenses, $2,945.14.
Py a final settlement with the Administrator, reports pd by the Clerl? and Master to the April Terra, 1867, *177 it appeared that the amount of the fund arising from the hire of these negroes, on hand at that time, was $3,107.43.
At the April Term, 1867, the emancipated negroes obtained leave to be made parties to the suit, and to file a petition, setting up their claim to the fund under the control of the Court, and praying that it be paid to them.
This application was resisted by the complainant; and upon the hearing, the Chancellor decreed that the legacies given by the second, third, fourth and fifth items of the will — and for the payment of which a fund was provided in the seventh item above quoted, said legacies amounting, to $900 — should, be paid out of the fund in court, to the extent of the fund of $898.65, which was raised by the sale of personal property, the sale of the three old negroes, and the hire of the said three negroes. The remainder of the fund in court was decreed to be paid to the petitioners. From this decree the petitioners appealed to this court.
The petitioners ask only for the payment to them of the fund now in court, and no question arises thereon as to the correctness of the former orders and decrees in the cause.
This record shows that, by the will of Joshua Pearre, the proceeds of certain personal property and of three negroes, whom he directed to be sold for that purpose, were to be given to certain legatees. The proceeds of these sales, and the hire of said slaves previous to their sale, amounted to the sum of $898.65. This fund was used in the payment of debts of the estate and of the expenses of the administration; and the Chancellor de *178 creed that these legatees were entitled to have their •fund reimbursed to that extent out of the fund raised by the hire of the negroes, who by the provisions of the will were to be emancipated on the first day of January, 1854, and who, as appears by the record, have been hired out from that time until the year 1862, to pay the debts of the estate, the expenses of administration and the distributive share of the widow, and to raise the present fund for the purpose of defraying their expenses to Liberia.
This fund clearly belongs to those for whose benefit it was intended and by whose labor it has been created.
Waiving all other questions, the bequest of freedom to these slaves was specific, and the slaves did not constitute the primary fund for the payment of debts as between them and other legatees, either general or specific. The bequest of freedom is of a higher nature than a pecuniary legacy, and in the absence of any indication of the testator’s intention to that effect, will not abate in order to satisfy such a legacy, or be compelled to contribute if it is absorbed by the debts of the estate. If there be two legatees of personal property, the one may easily and consistently with its nature, contribute to the exoneration of the other from a common burden; but where the bequest to a man is of his personal liberty, the legacy can be made to contribute only by selling the legatee, or continuing him in slavery until he shall work out the required contribution. -
In "case of legacies of money or chattels, all stand upon an equal footing, and ratable portions of all may be taken to equalize the burdens among them; and if neces *179 sary, tbe chattel itself may be sold and its proceeds distributed. But how shall we equalize the burden in a case where one legatee must contribute his own bondage for life in exoneration of the bequest of a horse to another legatee? If the will manumit a family, shall we sell the father, the mother, or the infant, as a means of relieving the burden from some other legacy? And if we sell either, how shall we enforce contribution from the •more fortunate members of the class, and equalize the misfortune among them?
The testator declared that these slaves should be set free on the first day of January, 1854. We will not presume, in the absence of any expression to that effect, that his intention was that they should be sold as slaves for life, or continued in slavery for an indefinite number of years, merely to insure the payment of the legacies given to his children and grand children.
Bequests of freedom to the slaves of a testator have usually arisen from strong motives and earnest feelings of justice, kindness, or personal affection; and where a will of that character is made, the presumption, in the absence of contrary expressions, is, that the testator intended the bequest of freedom to take effect according to the terms of his will, and not that the liberty or bondage of those whom he manumits and their posterity, should be made to depend upon the good faith or diligence of an executor, or the accuracy of the testator’s calculations as to the amount of his estate.
The decree of the Chancellor will be reversed so far as it directs the payment of legacies out of the fund in court; and a decree entered that the fund be distributed *180 to those individuals by whose labor it was produced in the ratio, of their respective earnings as nearly as may be ascertained.